UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO. 3:07-CV-129

FIORAVANTE SETTEMBRE                                    APPELLANT

V.

FIDELITY & GUARANTY LIFE
INSURANCE CO., et al                                    APPELLEES

<u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court upon an appeal from the Bankruptcy Court.  The Appellant argues that the Bankruptcy Court erred when it denied him a discharge pursuant to §727(a)(3) of the Bankruptcy Code.  Fully briefed and argued, this matter is ripe for decision.  For the following reasons, the decision of the Bankruptcy Court is **REVERSED**.

## I. FACTS

The Appellant, Fioravante Settembre ("Settembre"), incorporated an entity named Insbanc in June 2000.  Insbanc marketed and sold life insurance products through agents placed inside bank branches.  Settembre was a 50% shareholder in Insbanc and its Chief Executive Officer. His bank statements also suggest that at the time he was the CEO of Insbanc, he was also earning approximately $8,000 per month for work for Lafayette Life. Prior to the incorporation of Insbanc, Settembre worked in the insurance business and marketed himself as "The Settembre Group."

On August 1, 2001, the Appellant, his business partner, and Insbanc borrowed $500,000 from Life Event Advantage Division of Life Insurance Company of the Southwest ("Life Event") for operating capital.  On July 2, 2003, the same parties borrowed $200,000 from Fidelity & Guaranty Life Insurance Co.  They also borrowed $800,000 from Reliastar Life Insurance Company; $200,000 from The Hartford; and nearly $1,000,000 from National City Bank.  Thus, in a three-year time

period, these parties borrowed approximately $2.6 million in operating capital for Insbanc.

Insbanc declared bankruptcy on March 31, 2005. The Appellant's business partner filed for Chapter 7 relief six months later on October 14, 2005. The Appellant filed for Chapter 7 relief the next day - on October 15, 2005. The Appellees initiated an adversary proceeding seeking to deny the Appellant a discharge pursuant to 11 U.S.C. §§ 727(a)(3), 727(a)(4), and 727(a)(6). They then filed a summary judgment motion seeking denial of the Appellant's discharge under § 727(a)(3). The Bankruptcy Court remanded the summary judgment motion and gave the Appellant more time to produce financial records. After this deadline passed, the Appellees filed a renewed motion for summary judgment regarding §727(a)(3) and the Bankruptcy Court granted said motion. It is this decision that Settembre appeals.

## II. STANDARD OF REVIEW

A federal district court has jurisdiction to hear appeals from "final judgments, orders, and decrees" of the bankruptcy court. 28 U.S.C. § 158(a). On appeal, a district court reviews the bankruptcy court's finding of fact under a clearly erroneous standard, but reviews de novo the bankruptcy court's conclusions of law. Nicholson v. Isaacman (In re Isaacman), 26 F.3d 629, 631 (6th Cir. 1994). When there is a mixed question of law and fact, the district court is to "break it down into its constituent parts and apply the appropriate standard of review for each part." Bank of Montreal v. Official Comm. of Unsecured Creditors, 420 F.3d 559, 563 (6th Cir. 2005)(quoting WesBanco Bank Barnesville v. Rafoth, 106 F.3d 1255, 1259 (6th Cir. 1997)).

## III. ANALYSIS

Section 727(a)(3) of the Bankruptcy Code provides that a bankruptcy court shall grant a debtor a discharge unless--

2

> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case...

11 U.S.C. § 727(a)(3).  "The purpose of section 727(a)(3) is to give creditors and the bankruptcy court complete and accurate information concerning the status of the debtor's affairs and to test the completeness of the disclosure requisite to a discharge.  The statute also ensures that the trustee and creditors are supplied with dependable information on which they can rely in tracing a debtor's financial history." Meridian Bank v. Alten, 958 F.2d 1226, 1230 (3rd Cir. 1992)(citing 4 Collier on Bankruptcy, ¶ 727-03[1](15th Ed. 1979)).

When a party objects to the discharge of a debtor, that party bears the initial burden of proving that the case falls within one of the exceptions to the bankruptcy discharge. Id. at 1232.  In order to state a prima facie case under §727(a)(3), the creditor objecting to the discharge must establish that 1) the debtor failed to maintain and preserve adequate records; and 2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions. Id.  Upon such a showing, the burden then shifts to the debtor to prove justification. Id. at 1233.

In the course of the bankruptcy proceedings below, the Appellees requested that Settembre provide all state and federal tax returns from the years 2000 through 2005; any and all contracts through which Settembre may have earned any form of compensation for the years 2000 through 2005; all bank account statements, check registers, and cancelled checks for the years 2000-2005, all life insurance policies on which Settembre was an insured life; a general ledger, receipts, disbursement registers, accountant work papers and tax returns for the years 2001-2005; and all monthly statements for all trusts, investment, brokerage and /or other income-generating accounts

held in the name of Fioravante Settembre or Fiore Settembre for years 2000 through 2005.   In response to these requests, Settembre provided unsigned federal tax returns for 2000 through 2005; state tax returns for 2002, 2002, and 2005; and two sets of bank account statements - the first set for an account in the name of The Settembre Group, dated from January 2001 through May 2005, and the second set for an account in the name of Fioravante Settembre, dated from April 8, 2005 through October 7, 2005.   According to Settembre, no other records exists.

In granting the Appellees' motion for summary judgment, the Bankruptcy Court concluded that Settembre was not entitled to a discharge because 1) he failed to maintain adequate records; 2) this failure made it impossible for his creditors to trace his financial history; and 3) this failure was not justified.  On appeal, Settembre argues that he should not have been denied a discharge under §727(a)(3) because he kept and disclosed adequate records.

The gist of Settembre's argument seems to be that the Bankruptcy Court erred in granting summary judgment to his creditors because they did not meet their burden of establishing, by a preponderance of the evidence, that the records Settembre provided are so deficient that his creditors cannot trace his financial history.  The Appellees, on the other hand, seem to argue that tax returns and bank statements are inadequate records as a matter of law under §727(a)(3), since they do not reveal the sources of substantial deposits into Settembre's bank account or the disposition of substantial cash withdrawals from the account. They also argue that the records that Settembre has produced reveal that he commingled personal and business funds in one account and that this circumstance further complicates their attempts to trace his financial history.

The "Bankruptcy Code does not require a debtor seeking a discharge specifically to maintain a bank account, nor does it require an impeccable system of bookkeeping. Nevertheless, the records

4

must sufficiently identify the transactions [so] that intelligent inquiry can be made of them. The test is whether there is available written evidence made and preserved from which the present financial condition of the bankrupt, and his business transactions for a reasonable period in the past may be ascertained." <u>Meridian Bank</u>, 958 F.2d at 1230 (citations omitted).  Furthermore, a debtor's records must be such that "creditors [need] not be forced to undertake an independent investigation of a debtor's affairs." <u>In re Juzwiak</u>, 89 F.3d 424, 429 (7th Cir. 1996). "The test [with respect to the adequacy of the debtor's recorded information] is not whether the debtor [from an examination of his records] could determine what was happening in his business (a subjective standard), but [rather] whether a third-party such as a trustee or creditor could determine from the records what has happening in the debtor's business (an objective standard)." <u>In re Buzzelli</u>, 246 B.R. 75, 97 (Bankr. W.D. Pa. 2000)(quoting <u>In re Ogden</u>, 1999 Bankr. LEXIS 437 (B.A.P. 10th Cir. 1999)).  The adequacy of a debtor's records are determined on a case-by-case basis, upon consideration of a number of factors, including the debtor's occupation, financial structure, education, experience, and sophistication. <u>In re Strbac</u>, 235 B.R. 880, 882 (B.A.P. 6th Cir. 1999). "Debtors have a duty to preserve those records that others in like circumstances would ordinarily keep." <u>Buzzelli</u>, 246 B.R. at 98 (quoting <u>In re Pulos</u>, 168 B.R. 682, 692 (Bankr. D. Minn. 1994)).  Accordingly,  "where debtors are sophisticated in business, and carry on a business involving significant assets, creditors have an expectation of greater and better record keeping." <u>Union Planters Bank v. Connors</u>, 283 F.3d 896, 900 (7th Cir. 2002) (quoting <u>In re Scott</u>, 172 F.3d 959, 970 (7th Cir. 1999)).

The facts here appear to be very similar to the situation presented to the court in <u>Buzzelli</u>. 246 B.R. 75. In <u>Buzzelli,</u> the debtor, who maintained a solo medical practice specializing in ophthalmology, had borrowed over $400,000 and then filed for bankruptcy. His creditors argued that

his debts were non-dischargeable under §727(a)(3) and the court agreed.[1]  The court found that with respect to his business practice: 1) the debtor maintained neither a general ledger or other book of original entry (i.e., cash receipts journal, accounts receivable and/or accounts payable journal, etc.) nor any type of spreadsheet summarizing his business transactions and financial transactions; and 2) the full extent of the debtor's record-keeping with respect to his medical practice consisted of bank checking account statements, cancelled checks, and check stubs. 246 B.R. at 102.  The court held that these items did not constitute adequate documentation under §727(a)(3), especially since the debtor had commingled business and personal transactions within the same bank account, and made frequent withdrawals to "cash," so that a third-party could not distinguish between personal and business expenses that were paid out of said account or determine the source of funds deposited into the debtor's checking accounts. Id. at 103.  The court also noted that "copies of tax returns, even when prepared by an accountant from whatever records the accountant can garner from the taxpayer, are not a significant indicia of sufficient record keeping" by said taxpayer. Id. at 104 (citing In re Goldstein, 123 B.R. 514, 524-525 (Bankr. E.D. Pa. 1991)).  Ultimately, the court concluded that the documentation provided was inadequate because it was impossible "for an outsider to ascertain [the] financial condition or...recent transactions...without organizing, reconstructing, independently investigating, and/or accepting oral representations by the debtor regarding the debtor's affairs." Id.

Importantly, however, the facts in Buzzelli were determined after a trial.  Here, the Bankruptcy Court summarily concluded that the Debtor's failure to maintain records made it impossible to trace his financial history.  The Bankruptcy Court obviously reviews matters such as this more often than this Court and certainly has a better understanding of what constitutes adequate

---

[1]The creditors also argued that Buzzelli's debts were non-dischargeable under §727(a)(4) and (5). Id.

records in this context, however, the Court's review is hampered by the many questions it has - questions which hopefully would be answered if a more complete record were made.

For instance, although the Bankruptcy Court found the Debtor to be a sophisticated businessman, how sophisticated is he?  There are levels of sophistication, depending on a number of factors.  The more sophisticated and complex the financial situation, the more complete the financial records should be.  How complex was the Debtor's personal financial situation?  In this case, what is the significance of not being able to produce a check register if bank statements are produced?  If some copies of cancelled checks were not produced, would not the bank statements identify the transaction so that an intelligent inquiry could be made of it?  Meridian Bank, 958 F.2d at 1230 (citations omitted).  Will any debtor who makes cash withdrawals without documenting the use to which the cash is put be denied a discharge or is the number of cash withdrawals in this case so extraordinary so as to deny a discharge?  If the large deposits coming into the account on a monthly basis represent the Debtor's salary and can be matched with records from Inbanc, what is the significance of the failure of Debtor to keep a check register or ledger of some sort to show the source of those funds?  What is the significance of unsigned tax returns if the Debtor is basically a W-2 filer, if he truly is?  What were the nature of the "business funds" which were deposited into the "Settembre Account" and what is the significance in this case of the commingling of those funds with personal funds insofar as it relates to the ability to trace funds?  Are Insbanc's records adequate to allow the Appellee to trace the funds it advanced?

In reversing the grant of summary judgment, the Court is not expressing an opinion that  the Debtor's records in this case are adequate.  Indeed, after a trial, the Bankruptcy Court may be of the very same opinion as before.  And the Court realizes that bankruptcy courts and creditors "are not

required to rely on a debtor's oral representations concerning...[his or her financial condition and business transactions] without also having some independent means of substantiating such representations. Id. at 97 (citation omitted); see also In re Juzwiak, 89 F.3d 424, 429 (7th Cir. 1996)("Oral testimony is not a valid substitute or supplement for concrete written records."). However, the Court believes under these circumstances, there are enough questions to warrant a trial.  The Appellant should have the opportunity to testify and present evidence regarding his level of sophistication, the complexity of his financial situation, the nature of the "Settembre Group" account,  whether there  are independent means of substantiating his financial transactions, and any other relevant information.

## IV. CONCLUSION

For the foregoing reasons, the decision of the Bankruptcy Court is **REVERSED**.  The Appellant's motion for a stay pending appeal is denied as **moot.**

cc: Counsel of Record; and
    US Bankruptcy Court WD/KY
    David T. Stosberg, Judge USBC